Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Good morning. We have two cases on our docket for argument this morning. The first one is 20-30382. Mr. Peck. Thank you, your honor. May it please the court, Robert Peck on behalf of the Plaintiff Appellants. Rule 4K2 is rendered a nullity if NYK line's theory is accepted. That due process requires a foreign defendant to be at home in the United States. Now, we understand that the defendant relies on the Patterson case for that proposition. And at the same time, we don't disagree with the result in Patterson. There, 11 temporary employees were stationed in the United States, and that was insufficient to satisfy a national context rule, which is the rule that every circuit adopted that has addressed it in the aftermath of 4K2. Now, what we disagree with and ask you to about is the provision in the opinion that requires a defendant to be at home. To explain, at home means that a defendant is either incorporated in the United States or has its headquarters, its nerve center in the United States. We think that if that is a requirement, then there will always be a state court that has to comply. Now, the defendant has offered three scenarios in which they think that it still applies, regardless of its test. In its original brief in this court, it suggested the Perkins case, the 1952 decision, in which a Filipino corporation had relocated to Ohio as an example of being at home in the United States, but still subject to 4K2. But of course, the Perkins case approved of Ohio state courts having jurisdiction over the corporation because its headquarters was there. And so we think that instead, Perkins proves our point. Two other cases that they suggest, one is Ogden, a 2014 case from the Eastern District of Louisiana, in which there was a headquarters in Houston, in which apparel for US employees abroad was discharged from. And we think it's clear that the Texas courts would have had jurisdiction. The Eastern District applied 4K2 because there had been no objection on the grounds that a state court had jurisdiction. So again, not an instance where 4K2 could be applied. And finally, it imagines a situation where it says a British Virgin Islands corporation registered to do business in New York with could exist solely on the internet, and that would be at home in the United States in some fashion. We think that both it's unrealistic and impractical, and that indeed, internet does not provide an at-home basis. Surely a nerve center, someplace where its goods or services are discharged from, would exist, and some state would have jurisdiction. So in the end, this means that 4K2 can't operate under their theory at all. And not even in the instance of on the Capitol, the case that gave birth to 4K2, where the Supreme Court urged that either Congress or the rules committees come up with something that fills the gap. This court recognized that that gap was filled in the World Tanker case. Mr. Pick? Yes. This is Judge Jones. You're arguing Rule 4K2, but you're claiming that Rule 4K2 embodies the at-home principle. As I read the Supreme Court cases, that is the principle of general jurisdiction, which was developed under the 14th Amendment. Are you really quarreling with 4K2, or are you saying that the standard for general jurisdiction in Daimler is too broad? I'm saying that the standard for general jurisdiction does not apply to 4K2. What's your best case for that? Well, the fact of the matter is that there are three circuits that have unequivocally said that a national contacts rule is all that's required by 4K2, even in the aftermath of Goodyear and 1st, 6th, and 10th circuits. In addition, two circuits, the 9th and the Federal Circuit, have used a purposeful availment rule with respect to 4K2, and my reading of that means that they've adopted essentially a contacts-type rule, too. On the other hand, there are three that have had no 4K2 rulings since Daimler. And so that leaves us with just three circuits that may have said otherwise. That is, the 11th Circuit, in an unreported decision about a year ago, said that there were insufficient contacts and said also that there were insufficient contacts to apply at home. Now remember, this court has also said that unless the Supreme Court unequivocally says that something is different, that it will stay by its circuits. And the court has not even inferred that the Fifth Amendment requires an at-home requirement. In fact, it took pains in Bristol-Myers and in Ford to say that none of this that we're saying about the 14th Amendment necessarily applies when we are talking about jurisdiction in federal court under the Fifth Amendment. If we decided to address this case narrowly and just look at the question of jurisdiction in admiralty cases, personal jurisdiction in admiralty cases, how would that impact, where would you argue there, if we just wanted to do that? I'm not saying that's we prevail on admiralty. It gives us an alternative ground on which to say that 4K2 applies without an at-home requirement. Due process has always looked at history and legal traditions. And that history and legal tradition support the exercise of personal jurisdiction over foreign parties that have nothing to do with the United States. And so therefore, we think it meets due process because of that history and tradition. Mr. Fick, let me come back to Rule 4K2. The advisory, I believe that OmniCapital recognized the distinction between the due process basis for personal jurisdiction over a defendant, on the one hand, and nationwide or international service of summons. Rule 4K2 is within Rule 4, which is described as summons, and the advisory committee note to the 1993 amendment says, there remain constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States. Doesn't that separate 4K2 national contacts, which is the standard when there are federal claims at issue from the underlying due process concern? I don't think it separates it. This court and every court looking at 4K2 when it was first And in Omni, the court said specifically, and I quote, service of summons is the procedure to assert jurisdiction over the person of the party served. So we've always regarded that if service is legitimate, then personal jurisdiction is met and due process is satisfied. I have a question. This is Judge Costa. I know you think we should distinguish general jurisdiction, the standard, and not require the at-home standard. But is your consequence of general jurisdiction the same? Meaning that it would be all-purpose jurisdiction so that even an NYK line employee in Japan who has an employment dispute could bring suit in the United States? Because that's normally the consequence. General jurisdiction. So would that be the conclusion of your position? And the question then would become, does that person have a federal cause of action? And if not, and so as a result, 4K2 could not apply in that situation. I think that the rule itself creates the limits that make sure that it applies in a constitutional fashion. What is the rule? You don't have a rule. What's your rule? The rule that we proposed is a national context rule. But you said there weren't enough contacts in Patterson. There are enough contacts here. And, oh, by the way, the Seventh Circuit said having bank account, banking relations isn't sufficient. The Fifth Circuit said filing a lawsuit unrelated to the matters in issue isn't sufficient. So how do you count? How do you have any principle for counting contacts? I don't see that in the Supreme Court jurisprudence at all. You're making it up. As I said, every circuit that has addressed 4K2 has said that a national context rule is sufficient. And here what we have is what the district court itself recognized were facts that barely may be regarded as sustaining continuous and systematic contacts. NYK Line has had offices here since 1920. It calls on at least 30 U.S. ports, operates 27 shipping terminals in the United States, operates air cargo service at six U.S. airports. It has an FMC, a Federal Maritime Commission license, which means that it meets financial responsibility requirements that it could be sued here, which means that it knows that it can be sued here. Its revenue in the United States was $1.47 billion at the time the lawsuit was filed. It designates the Southern District of New York as the proper venue to sue it over bills of lading and contract litigation. It litigates in the U.S. courts at least 30 lawsuits that it brought over the last 30 years. Mr. Peck, wouldn't we be creating a circuit conflict because the Abolas case in the Seventh Circuit had a litany of contacts that was about as long as that? None of them related to the claims in the case, and the Seventh Circuit went systematically through every type of contact and concluded there was no jurisdiction. Again, one of the parts of our test is a national context that relates to the business that it was engaged in when it created its liability, and here it is in the business of carrying goods, and that's what it was doing when it crashed. And if I can answer about the Abolas, the Seventh Circuit's Abolas decision, there that was a Holocaust-related expropriation. That was not the business of the Hungarian banks in the same panel on the same day in a related case found that sufficient commercial activity under the Foreign Sovereign Immunity Act was enough to convey personal jurisdiction. So it seems to be somewhat ambiguous in the Seventh Circuit what their position is on 4k2. Mr. Peck, this is Judge Duncan. Good morning. Let me try to put a finer point on what Judge Jones and Judge Costa, I think, are getting at, at least as I understand it. You're not making a general jurisdiction argument. You're not saying the shipping line is amenable to suit because of their national context for anything and everything, right? That is correct. Okay, what you're saying, so it sounds like what you're saying is you want a national context test, and I just want to understand, are you saying that the claim in this case relates to the national context that the shipping line has with the United States? Is that what you're saying? Yes, we're saying that it relates to the business that it is in in the United States. Okay, because it certainly doesn't arise out of those contexts, to use the language of the personal jurisdiction cases, right? That's correct. You're saying it relates to those contacts in some way. It relates in the same way that in the Ford case, the Supreme Court rejected a causation-based requirement and said it still relates to the business of getting as selling cars and producing cars that meet standards. Okay, thanks. And so to be really clear, we're saying that this is 4k2 jurisdiction, that the rule sets up the jurisdiction, and it is tested under the due process clause of the Fifth Amendment by a national context rule. Well, but Mr. Peck, isn't your related to so loose that it falls under what Justice Alito called a loose and spurious form of jurisdiction in the, I think it was the Goodyear case, because you're describing the business of NKP at such a high level of generality. It's actually a multinational corporation engaged in a great deal of different kinds of work. Now, of course, if these plaintiffs had a state claim against NKP, it is plain they could not sue it in the U.S., right? That is correct. If they had a state, it would depend, of course, if we're talking about these between the Fifth and the Fourteenth Amendment, if you say they can be sued in federal court because they do business anywhere in the United States if they have sufficient contact, but they cannot be sued in a state for the equivalent injury. And one example I have is the by a catamaran that had been manufactured in France. Right. So let me start with the basis of your question, the difference between the Fourteenth and Fifth Amendment for these purposes. And certainly we don't deny that there is overlap between the two. The Fifth Amendment shares requirements of fairness and reasonableness with the Fourteenth Amendment. And that goes to the personal liberty aspects of due process. We think that the national contacts rule satisfies that in the same way that minimum contacts satisfies that in the states. But there is another aspect to due process, at least under the Fourteenth Amendment, and that is it is a tool of interstate federalism. The Supreme Court has said that repeatedly now in Bristol-Myers and Ford and said that this is something that's distinction that prevents a state court from exercising its authority over the parties when, indeed, another state has the proper authority there. And so therefore, it's intruding on the sovereignty of another state. That doesn't exist with respect to the this due process clause does not recognize foreign governments as having due process rights, and therefore it does not have to concede that it exercises extraterritorial authority all the time under the Foreign Commerce Clause. Well, excuse me, sir, but Justice Ginsburg, writing for at least eight members of the Supreme Court, rebuked the California courts in the Daimler case on the basis that they were absolutely ignoring considerations of international comity. That is correct, because, again, the foreign policy didn't the U.S. government argue in that case that comity was very important to recognize? It did, but that's because the federal government has exclusive authority in foreign policy and international commerce. That does not exist for states, but it does exist for the United States, and it can take those considerations into account itself. But isn't the logical consequence of your argument that if we, an inferior federal court, carve out new ground, because I couldn't find a single case that said that the Fifth and the Fourteenth Amendment have different standards. If we carve out new ground, aren't we usurping the authority of the federal government to regulate international commerce and foreign policy? Your Honor, no, you are not. 4K2 represents the authority of the United States government in authorizing this. And on top of that, in the Jay McIntyre case. Excuse me, Mr. Peck. Can I ask you how you fit the fact that the accident occurred on a ship owned by the U.S.? In other words, that's what was hit. How do you put that in the mix? Well, because, of course, that is property of the United States as a sovereign. It, therefore, heightens the interest of the United States in the dispute and, therefore, gives it every right in the same way that Montana and Minnesota exercised that right in the Ford case to litigate this issue in their courts. We cited the Cooper case, a Southern District of California case from 2015, to the same effect. Their U.S. Navy personnel was stationed near a nuclear reactor in Japan. And we recognize that authority to sue the Japanese company existed in the United States because, in part, the United States' interest was second to none. And here, of course, the warship is the extension of U.S. sovereignty wherever it exists. Mr. Peck, I wanted to clarify your answer to Judge Duncan's question because in responding to his question, you invoked the Ford case and the broad definition of related to. Normally, general jurisdiction needs no connection to the dispute, the actual dispute, whereas specific jurisdiction does, and that's what Ford was about. So, are you saying in the National Contacts Inquiry that would govern Rule 4K2 here that there's still a difference between general and specific? Or are you sort of talking about a that it seems does have some type of causal nexus, whereas general jurisdiction usually doesn't? I am talking about a different test. I think it is error to regard 4K2 as a form of general jurisdiction. It is a form of congressionally authorized jurisdiction, just as when Congress adds a personal jurisdiction service requirement to any federal cause of action. This was supposed to encompass all those federal causes of action that don't have a... So, there is no general specific jurisdiction dichotomy in your view under the situation? That is correct. And then opening brief, the Supreme Court has recognized multiple different versions of personal jurisdiction, tag jurisdiction based on history and tradition, consent jurisdiction, which, as the 11th Circuit said, could be enacted by statute. So, there's different ways that personal jurisdiction can be effectuated. And unlike where the Supreme Court has said that specific in general apply to state courts, there is no such limitation with respect to congressionally authorized jurisdiction. Mr. Peck, this is Judge Higginson. I have three quick questions. Could you note them down? Just in response to Judge Costa's question, would you say that this argument for a whole new test is consistent with the amici professor's position? Or are you embracing that as an alternative? That's first question. The second one, I want to be clear because Judge Jones has highlighted the 7th Circuit Abilie's decision. Are you embracing that decision and its argument saying that NYK here has more continuous and systematic context analogous to the parent company there, which the 7th Circuit did say appeared to have general jurisdiction? And then the last question is, do you draw any jurisdictional support from the Daimler footnote 9 reservation for quote exceptional cases? In other words, accepting 14th Amendment jurisprudence, but saying that this fits into that exceptional case category. Thank you, Your Honor. Yes, we proposed solely a national context test in light of the panel's decision and the concurrence. We thought that it made sense to embrace... Okay, others may have questions, so go on to the second two and the third. And Abilie's, we think that there was insufficient national context period and that would not meet our national context test. We do not agree with the 7th Circuit that an at-home requirement is also part of the mix. So therefore, we think that that's different. And we're not proposing a new test. This test is the test that existed prior to Goodyear and Daimler and nothing in those opinions indicate that the 5th Amendment requires the same thing. And finally, with respect to footnote 9 in Daimler... 19. What? 19? I think it's footnote 19. Again, I'm sorry. I did not write down exactly what the footnote said. Oh, it's just, it seemed to have a reservation that some have called a nullity for exceptional cases. Right. And I think an argument could be made that Admiralty is one of those exceptional cases that exists as a matter of international law. It has always been recognized maritime nations could adjudicate that even if they have no connection with whatever happened at sea. And so it's possible to do that. But we also think that there's a stronger argument, even in Livnot, the D.C. Circuit case. They said that while they used an at-home requirement, they also said that there is an exception to their requirement when it's a matter of international law. And we think that Admiralty fits their exception as well. Mr. Peck, in arguing, as you say, that you embrace the position of the amici here, Professor Morrison argued to the U.S. Supreme Court in amicus brief that the due process clause has no role to play at all in the process used by courts, and that if there is anything that should be considered, it's a dormant commerce clause. Do you embrace that part of his argument? Or isn't this a clever fallback on the road to doing away with due process for entities? Your Honor, we do not embrace that. We note that Professor Stephen Sachs Harvard has also said that the Fifth Amendment has nothing to do with personal jurisdiction. We did not embrace that by saying our test. Now, the fact that he is now amici along with other civil procedure professors and have the benefit of the decision in Ford means that he may have changed his position. I don't know that. Certainly we don't endorse everything that he's ever written prior to this, but we do endorse that brief's approach. Thank you, Mr. Cenk. Mr. Matheson? Good morning, Your Honors. Can you hear me? Yes. Thank you. May it please the Court, my name is Eric Matheson. I, along with Thomas Canaveria, Robert Murphy, and Peter Tompkins, represent the defendant below, appellee here, Nippon Yusin Kabushiki Kaisha, referred to throughout these proceedings as NYK Line. NYK Line is a Japanese corporation which has always maintained its principal place of business in Japan, and it operates a global transportation business. NYK Line does not own the ACX Crystal. Following the collision that gave rise to this incident, the plaintiffs commenced two actions in the Eastern District of Louisiana, one bringing death on the high seas claims, and the other claims for injuries in maritime tort. Both actions were ultimately docketed before District Judge Afric, and in both of those cases, NYK Line filed pre-answer motions to dismiss the claims on the basis that controlling Supreme Court precedent and controlling precedent of this court require that in order to exercise general personal jurisdiction, the defendant must be essentially at home in the forum. NYK Line is not. Plaintiffs argued in the District Court that NYK Line was only subject to general personal jurisdiction. Nothing in the amended complaints provided any basis for specific personal jurisdiction. The claims as pled in this case neither arise out of nor relate to any acts allegedly done by NYK Line in the United States. The District Court analyzed personal jurisdiction over NYK Line and found that it could not exercise general personal jurisdiction in this case. The District Court correctly applied the at-home analysis, the only test applicable to general jurisdiction. It rejected the argument that the analysis did not apply because this was a maritime collision case, and because of the historically broad subject matter jurisdiction in admiralty and maritime cases. The District Court also acknowledged that it was bound by insurance company of Ireland, the companion, the box site, the Guinea, and rejected the plaintiff's arguments because they impermissibly conflate subject matter and personal jurisdiction. The Supreme Court's instruction in insurance corporation of Ireland is that those are different, they are unique, and the case law developed demonstrates that they do not inform, affect, or impact each other. That is why the Supreme Court has repeatedly explained, most recently in BNSF, that general jurisdiction is a dispute-blind inquiry. In the District Court, the plaintiffs also argued that even if the at-home test applied, NYK Line was at home in the United States because of its many contacts here. The District Court likewise rejected that argument. Once District Judge Afric had ruled in this case, the plaintiff appellants did two things. They filed their appeal, and they also brought in Amici into the case. On appeal to this court, they made new and different arguments. For the first time, setting forth an argument that Rule 4k2 is unconstitutional if the at-home analysis is applied. And the Amici argued that in the Fifth Amendment context, the analysis of Goodyear, Daimler, and BNSF should be displaced in favor of a new test, which would look to whether the defendants had contacts with the forum, and whether the claims relate to the corporation's business in the forum. Prominently featured among NYK Line's arguments, in this case originally, to this court, were that under the well-established precedent of this circuit, new arguments raised for the first time on appeal will not be considered. That precedent extends to arguments of constitutionality and limits the scope of what Amicus may argue to the facts of the case and the arguments of the party. Despite these robust prohibitions, appellants here in this court now en banc have argued for the first time that the ownership of the USS Fitzgerald is relevant to the analysis of whether there is general personal jurisdiction over NYK Line. If the plaintiffs really believed that the USS Fitzgerald gave them jurisdiction over the ACX Crystal, then the ACX Crystal's owners would be in this suit and before this court. General personal jurisdiction, as this court has repeatedly found, will rarely be had over a foreign defendant. The same is true of that it is extraordinarily difficult to establish general personal jurisdiction over a corporation other than in its place of business or place of incorporation. Plaintiffs have argued that cases like Moncton and like this court's precedent in Frank, which has expressly directed parties not to look back to the pre-Goodyear-Dahmer standards, are irrelevant because we deal here with a Fifth Amendment case and not a 14th. They and Amici argue that these are somehow different than the 14th Amendment concerns. Despite both amendments using the same language and all of the circuit clauses, including this one, have uniformly held, at least within the context of general personal jurisdiction, that the applicable test is the same and the only difference is the scope of context. Appellants here have founded their jurisdictional assertion on FRCP 4k2. The appellant's papers have not explained the limitations of the Federal Rules Enabling Act or the comments to the rules. The appellants never discuss FRCP 4k2b that the exercise of jurisdiction must comport with the Constitution and the laws of the United States. NYK Line has exhaustively explained in the district court, to the panel, and again to this court, that Supreme Court precedent and this court precedent state that the Federal Rules of Civil Procedure are just that, procedural. They cannot abridge, enlarge, or modify a substantive right. Appellants have just ignored this precedent. Appellant's briefing to the panel and to this court is devoid of any analysis of Insurance Corporation of Ireland. Insurance Corporation of Ireland, Goodyear, Daimler, and DNSF are the laws of the United States. Those decisions define the contours at the constitutional level of due process. This court's decisions, from Yamalaya forward to Patterson, to this case, have presented a uniform application of the same analysis within the 14th and the Fifth Amendment standards. The sole focus here is the due process right of NYK Line. The Fifth Amendment context is invoked when the plaintiffs in a given case bring a claim that arise under federal law. As NYK pointed out in its briefing to the court, the Supreme Court's case in DNSF demonstrates that some federal claims, however, may be brought in either federal or state court. There, the Federal Employers Liability Act was at issue, and like the Death on the High Seas Act case here, the claims are cognizable in both federal and state court. But defendants' rights to due process under the Constitution are not controlled by how the plaintiff phrases its cause of action in the complaint. To allow a separate test for Fifth Amendment due process under FRCP 4K2, where a claim is brought pursuant to federal law, would be contrary to Insurance Corporation of Ireland, Helicopteros, and BNSF, precisely because it would abandon the dispute-blind inquiry and allow subject matter jurisdiction to control and affect the defendant's rights. That is an arbitrary distinction, and it is not tied to the cause of action at issue. The distinction which the Supreme Court explained in Insurance Company of Ireland would be abandoned. The general personal jurisdiction inquiry would not be dispute-blind, but then dispute-focused. There are many inconsistencies that would result from the determination that NYK line is subject to general personal jurisdiction here. General personal jurisdiction unlocks jurisdiction for all claims, anywhere in the world they may arise. There is no limited general personal jurisdiction, and there is no just-for-this-one-case general personal jurisdiction. A corporation that is subject to general personal jurisdiction in the Fifth Circuit is subject to jurisdiction here for all claims, all over the world, no matter how they might arise. Thus, to create a different test for general personal jurisdiction within the Fifth Amendment context, within 4K2, or with any other context, provides a novel and irreconcilable inconsistency in the law. Once general personal jurisdiction is found, it is not limited to the type of claim. This then brings us to the Amici's proposed test. The court would ask whether a non-U.S. defendant sued on a federal claim, not amenable to suit in any state court, was doing systematic and continuous business in the United That test is an impermissible blending of general and specific jurisdiction. Those courts that have been asked to entertain such tests have uniformly rejected them, including the Tenth Circuit's prominent decision in Grupo Cementos. It is clear that general and specific jurisdiction are distinct, and it is a binary assessment. Either the claims arise from the contacts in the forum or relate to them, as the Supreme Court has now clarified in Ford, or they do not. The court may assess whether the defendant is amenable to any and all suits under general personal jurisdiction, but the exercise of that jurisdiction is limited to those places where the corporation is at home. Supreme Court precedent has been very careful in limiting the reach of general personal jurisdiction. Appellants in Amici are asking this court to ignore those limits. Ultimately, the plaintiffs in this case didn't have the facts they wanted with respect to NYK Line. NYK Line does business in the United States. It has contacts with the United States, but NYK Line's home is not in the United States, and two decades of this court's precedent and every other circuit that's looked at the issue, those cases clearly provide that the court cannot exercise general personal jurisdiction over NYK Line because it is not at home here. Reversing Patterson alone changes nothing. Supreme Court precedent and this court's precedent preclude the exercise of general personal jurisdiction over NYK Line, and appellants have not argued that that precedent should be upended. Accordingly, NYK Line respectfully asserts that the thorough and well-reasoned decision of the district court must be affirmed. Thank you. So you are saying that it is irrelevant that this is an admiralty case and that the ship to which was collided was owned by the United States. You're saying that's irrelevant to this case? We are, Your Honor. It is completely irrelevant because to bring those types of considerations into the analysis shifts the focus away from due process, shifts the focus away from the defendant's rights, which is the sole issue that is before the court. Is the problem with the fact that the ship was owned by the U.S. that they didn't preserve that argument? Or are you saying that someone colliding with a United States owned, I'm saying owned by the United States government, I'm not talking about owned by a private U.S. citizen anywhere in the world, that is not the same thing as essentially treading on U.S. soil? For the reasons set forth in our brief, Your Honor, it is not even close to the same as treading on U.S. soil. There is certainly the waiver argument here, but on the even if the court were to go that far, which again, it should not because it's raised here for the first time, the cases they cite don't support that proposition. And the modern construction of how a vessel is under the law does not support the assertion that it is territory such that a collision has occurred in the United States when a U.S. vessel was one party to the collision. Additionally, Your Honor, the Navy isn't in this case, and the USS Fitzgerald isn't in this case. Mr. Matheson, it's Judge Higginson. I had two questions. If the issue before us is one that the Supreme Court is twice reserved answering as to the Fifth Amendment being different than the Fourteenth Amendment, of course, the plaintiffs are supported by amici civil law professors. My question to you is, can you point us to any scholarship, particularly originalist scholarship, any originalist law professors that have pointed to an answer from what they would have thought about in 1791? Or more importantly, can you point us to any scholarship from foreign relations scholars? Because when I read Daimler, the Supreme Court is reprimanding the Ninth Circuit for not sufficiently considering international comedy. So my first question is scholarship you would point us to, not distinguishing the professors, what would be the foreign relations scholarship you would point to to support your position? And the second question is, yes, Japan seems to have a robust system of corporate accountability, but would your rule of law mean that NYK Line could relocate its headquarters to a company that doesn't have a developed regime? And therefore, even though it does extensive business in the U.S., there would be no recourse other than claim-specific jurisdiction. Okay, I'm going to take those one at a time, Your Honor. First, in response to the question about scholarship, we are not pointing to any scholarship, and I don't have any that I'll cite to you here, Your Honor. But what I will say is, when you look at what the Supreme Court has is what the circuits have resolved on the national contacts test. The plaintiffs keep talking about national contacts, national contacts, national contacts. The issue, Your Honors, is not national contacts. It is what do you do with those contacts once you have determined them. So, Judge Higginson, we would suggest that if you read those cases carefully, the Supreme Court has left open the question that the circuits have answered, which is, do we look to national contacts at the one hand because we are the United States and our district courts are not confined in federal court actions, or do we say that we are limited to the geographic confines in which the district court sits, even in a federal action, the same way it would be if it sat in diversity? In answer to the second part of your question about the possibility of this same situation occurring in a country that does not have robust laws. First, with respect to the question, Your Honor, we would say that it's irrelevant because the question here is the defendant's rights in the United States. However, to be fair to that question, there's another element at play here, and that is the Supreme Court has said that there is an exceptional circumstance, and it is true that the Supreme Court has never affirmatively found that to be the case, but as the recent Ninth Circuit decision in Isla V. Alia explains, these type of fact patterns are just not that common in the courts. One example of the fact pattern is the district court's decision in Agde. There, the only conceivable place that the corporation was doing anything was in the United States, and so in a scenario where a corporation was located in a foreign country that had no effective legal system, if it could be determined that the corporation's contacts and its business were occurring in the United States, it may, under the specific facts of the case, fit within that exceptional circumstance because the court could assess those circumstances and say, we can't say that you're at home anywhere else. Your place of incorporation and your principal place of business are a sham, and so we look to what you're actually doing and where you're doing it. The other piece of that, your honor, is also that we are talking about general personal jurisdiction. If the acts done impacted in the United States, certainly there would be I've taken up your time. Those are very helpful answers. Counsel, could you address what the corporation, the foreign corporation's rights are under the Fifth Amendment and the source of those rights vis-a-vis the Supreme Court's holdings and the right of SIGGM last year about foreign persons having diminished due process rights and the decision in U.S. Agency for International Development, the foreign corporations outside U.S. territory have no rights under the U.S. Constitution. Can you address the big point about due process rights for foreign corporations under the Fifth Amendment specifically? Yes, your honor. I think the important distinction is that the lines of cases appear to divide. There are those cases which discuss the diminished rights, and in those cases, the common factor is that the defendant is outside the United States trying to exercise those rights. Conversely, the case law also discusses in situations like this, where NYK line is sued in the United States, appears in the U.S. courts and contests jurisdiction, that it can exercise the full scope of due process rights. Otherwise, your honor, there's no real point to be here because NYK line wouldn't have any due process rights at all before the court, and that would certainly seem to be a strange outcome in a case where it is challenging personal jurisdiction and where many other litigants have challenged, both successfully and unsuccessfully, personal jurisdiction. So, what is the source of that right? The source of the right, your honor, derives from the due process clause. Under the Fifth or Fourteenth Amendment, the due process right is the same. It's simply a matter of which sovereign you are protected against as a defendant, be it the federal government or the state. The Supreme Court's decision, including cases like Daimler, have looked at foreign defendants. It is true. They have looked at them in the same way. The substantive right is the same. The amendments using the same language protect against the intrusion by two different sovereigns, the federal government or the state government. Mr. Matheson, what's the status of the pending litigation in Japan? Your honor, our understanding is that the litigation in Japan is moving forward, albeit slowly, there. The owner has been sued in Japan, and the necessary amounts have been posted under Japanese law. And the plaintiffs are entitled to compensation as a matter of that law, to the extent they demonstrate the fault of the ACX crystal. And there, they have the claim against the owner. All right. Also, is it fair to say from your introductory remarks about rule 4k2 that you would consider that argument a red herring? Which argument in particular, your honor? I want to make sure I'm clear. 4k2 sets forth the jurisdictional standard of national contacts, which is somehow independent or replicates what due process should be. We think that is a red herring, your honor, and we reject that argument because it steps outside the scope of the specific and general personal jurisdiction rubrics, which the Supreme Court and this court have consistently followed. And the test that's proposed here is a blending of those tests. In the discussion even here today, the appellants have said both that they are and are not proposing a new test. We submit that they are proposing a new test, your honor, a blended test, and that it should be rejected. Mr. Matheson, Judge Duncan here. Would you agree that if under a national contacts test, that due process would be satisfied if the incident on which the suit was based were related to the national contacts of the defendant? I think that that is the specific jurisdiction case. So yes, your honor, in the circumstances where the claim relates to or arises out of those contacts, there would be specific jurisdiction. And in that sense, your honor, there is no need for the new test that's proposed here. You're just you're just saying, and I you've said this all along, I think, is that the claim here doesn't arise out of or relate to any of the national contacts of the defendant. That NYK clearly has with the United States. Not only are we saying it, your honor, but the amended complaints clearly do not frame a specific jurisdiction allegation. Thank you. Well, they're arguing really that specific versus general isn't the question here. So how does that fit if we end up saying, yes, it does? How does that fit? And how does that impact this question of whether they waived it by not raising it at the right time, not raising district court, not raising it soon enough here? Well, your honor, there the issue is that in the district court, they only raise general personal jurisdiction. So if now we're talking about a test that's outside the scope of either or either general or specific jurisdiction, for the reasons we've stated, we don't think such a test is appropriate. And as we pointed out in one of the footnotes to our brief, I apologize, I can't remember the number right now, but even under Ford Motor Company's recent decision in the Supreme Court where the court talked about what related to means, we don't think it would fit there either. So even taking that test, this is really in some sense, your honor, an academic exercise and an advisory question, because again, it comes back to the facts. The facts that the case. Well, since nobody else has anything to say, Mr. Matheson, I read a lot of cases in regard to this Did you find any cases where plaintiffs in this position who are suing a company that has some contacts with the United States unrelated to the claim in question have been able to go forward with their case? No modern cases since the Supreme Court's pronouncement in Goodyear, your honor. Well, for that matter, there aren't many even before then, are there? No, there aren't, to be fair, your honor, but certainly the Goodyear test, as all the circuit courts that have looked at it have held, have narrowed the scope of what the court considers and what is constitutionally sufficient to bring a foreign defendant into the forum. Do you address whether or not in the Seventh Circuit case, your client is similarly situated to the parent corporation that is discussed, related to a question that Judge Higginson asked earlier? And that is the Abelez case, your honor? Yes, it is. Okay. I think that in the differences, both entities have significant contacts with the United States, but under the current state of the law for due process, whether or not a corporation is subject to jurisdiction is simply not a matter of merely counting off the contacts. Bigger corporations would always have more contacts with the United States. NYK is a huge corporation. Should it be subject to jurisdiction where a corporation that only moves one or two containers in and out of the United States wouldn't, even though that was its sole business? It's not about how many contacts are out there, but it's about whether they're the right kind of contacts. Judge Elroy was kind to mention me. The line that was making me pause was this statement. Plaintiffs also argue that the context of MKB's parent company, comma, which appear to be sufficient to support general jurisdiction, should be imputed to MKB itself. Later, the court just assumes it for the sake of argument, but there they say the context appeared to be sufficient against the parent. That's the difficulty I was asking about. Well, your honor, there are certainly those cases, including from the Supreme Court, that have included the contacts of the subsidiary in assessing whether there's jurisdiction over the parent. But again, the interesting thing about looking to the subsidiary's contacts in the context of a general personal jurisdiction analysis is, do the subsidiary's contacts render the parent at home in the United States? And it seems that more would need to be shown simply than that subsidiaries are subject to jurisdiction in the United States. You would have to show that the parent itself is subject to contacts that demonstrate that the parent and not the subsidiaries are at home. That would be a relatively fact-specific situation, your honor. One additional point I just would like to touch on very briefly is appellants have mentioned the federalism argument in the context of Bristol-Myers and the recent- Can you still hear me? Apparently I lost video here. We can see you and hear you. Oh, okay. I'm just going to continue then. I've lost the video though. In the recent Bristol-Myers and Ford cases, but there the issue of federalism was only because acts or omissions within the state were at play. And so in Ford itself, the court was addressing the question of whether the acts or omissions that occurred in the states were sufficient enough for those courts to exercise jurisdiction. Okay. I think we have your argument, Mr. Matheson. Mr. Peck. Thank you. Thank you, your honor. First, I'd like to correct something that my friend said. We did not plead general jurisdiction. We pleaded Rule 4K2 as a basis for jurisdiction. The only time the word general jurisdiction appear in the complaint, which of course alleges facts and not the law, is when we explained that 4K2 does not apply to state courts of general jurisdiction, which is language from the rule itself. Now, as to what the Supreme Court has said, I'd like to point to the plurality decision in the Jay McIntyre case. There, Justice Kennedy explained that due process is considered forum by forum and sovereign by sovereign. And this is a fundamental flaw, I think, in the analysis. Well, my friend has been asked to explain what the due process right is that he's seeking to vindicate for his client. We've heard no explanation of what that right is, other than there's an at-home requirement that applies to general jurisdiction. The question is, where does that come from? I've explained that due process has two components to it. A personal liberty interest, which is satisfied, as this court said in Adams, by a national contacts rule. And this court has repeated that in submersible systems, system pipe, Niagara Vision, and previously in World Tanker. So that rule existed. And the question then becomes, well, where does the at-home provision come from? And I submit that that's the tool of interstate federalism that the court has referred to as another prong of due process. And that tool has no applicability at all when you're talking about a national sovereign. So those are two important things. It's also important to understand that there is considerable originalist scholarship that says the Fifth Amendment does not address personal jurisdiction. I mentioned the Stephen Sachs article. He's actually written several articles to that effect. There was also a Stephen Swanson article in the Journal of Maritime Law that talks about the application of the rule in admiralty and why a contacts rule makes sense for worldwide industry. It does discuss the reasons why admiralty is different, which, of course, our law has always recognized. And in terms of what is before us, the question is really, what does the Fifth Amendment require of 4K2? I've argued- What is your response to Mr. Matheson's waiver arguments that you haven't raised these properly, some of your arguments? Well, first of all, we argued that personal jurisdiction from the start existed under Rule 4K2, that the Fifth Amendment due process is not offended by the assertion of personal jurisdiction over NYK line. Under Rule 4K2, the Fifth Amendment does not impose an at-home requirement. And so the explanation that it basically renders it a nullity and unconstitutional in every application is merely an explanation that's consistent with those arguments. We've not made a new argument. With respect to the fact that the USS Fitzgerald was a U.S. Navy warship, that was never hidden in any way. In response to the motion to dismiss, we cited the Cooper case that explains why there is jurisdiction in U.S. interests when U.S. Navy personnel are there. We explained what flag states are and its application when there's ownership over the vessel. And so I think all of that simply allows us to continue to make these arguments. Mr. Peck, Mr. Matheson raised the point, and I hope I understood it correctly, that there are some statutes, like the Death of the High Seas Act, as to which lawsuits can be filed in either federal or state court. And it is federal law. I don't think anyone would deny that. That being the case, how do you reconcile your national contact under 4K2 or the Fifth Amendment with the Fourteenth Amendment standard? The fact of the matter is that this is a federal cause of action, regardless of where it is filed. Admiralty is recognized as a federal cause of action. And if I may, Congress has the right to set jurisdiction in courts other than the United States Supreme Court, wherever a federal cause of action exists. When the Republic was founded, we did not have federal courts other than the U.S. Supreme Court. And so therefore, federal causes of action were applied to the state court. And state judges are required, unlike other branches of state government, to apply federal law. But you're saying that state judges applying DOSA would then be bound by Rule 4K2 and not their own long-arm statute? I would say that if their long-arm statute applies, they can use that, and 4K2 would not apply. But to the extent that they are sitting on a solely federal cause of action that does not otherwise get recognized in state court, then I think that they are bound by federal law, and that would include 4K2. Thank you. That will conclude the arguments in this case. Thank you, Your Honor.